Let's turn to the second case in the calendar, which is Grajales v. Commissioner of Internal Revenue. Docket 21-1420-AG. And I understand we will have the appellant appearing by Zoom. I understand we see Mr. Agostino on the video screen. And for the government, we're present today. Is that right? Okay. So, Mr. Agostino, you have reserved two minutes for rebuttal. And I think on your screen you should be seeing from the clerk's office your timer. Do you see that? Yes, Your Honor. Very good. You may proceed. May it please the court, my name is Frank Agostino. I am representing the petitioner-appellant, Mr. Grajales. First, I need to thank the government attorneys who have worked with us throughout this. This started as not a substantial case, but more substantial to this taxpayer than it was. I can probably ascertain that this was a pro bono case picked up by the Nevada County Lawyers Association. So, the issue is whether 6751B's supervisory approval requirement applies to the exaction prescribed by Section 72. Let me put it into plain language for you. Section 6751B is that section of the Internal Revenue Code that provides that no penalty under the code can be assessed against the taxpayer unless the determination is personally approved by the immediate supervisor of the individual making the determination. Essentially, what the code says is we're not going to impose penalties on taxpayers unless a supervisor looks at it personally. 6761, 6751C, though, is a very broad definition of penalty. Not only does it include sections of the code that are called penalties, but it includes additions to tax and any additional amount. Additional amount is not a term of art. These are just, we contend, congressional expressions of the fact that before the court, before the IRS, imposes an exaction in addition to the tax on a taxpayer, someone needs to look at it. But why can't additional tax be a tax? Tax is defined in Section 1 of the Internal Revenue Code as an amount calculated based on gross income. So, the code has order rules. I understand that. That's the usual thing. But in this instance, people have been privileged by the tax code to sock money away without paying taxes and have it grow without paying taxes. So, why does it not make perfect sense for the IRS to say if you take that money out that you owe additional tax as opposed to a penalty? In other words, to make up for the tax that you didn't pay because you availed yourself of the privilege of creating a retirement account. So, we will go, I mean, and we'll go through that. But as we've said in our briefs, one, you look at the plain language. Two, you look at the legislative issue. Well, wait a second. Let's stick with the plain language for a second. What about Section 72T, which says if the taxpayer receives any amount from a qualified retirement plan, that's what happened with your tax, with your client, the taxpayer's tax under this chapter for the taxable year, which such amount is received, shall be increased by an amount equal to 10% of the portion of such amount which is includable in gross income. That clearly refers to it as a tax, and it's computed as a percentage of the including of gross income. Now, it's a different computation than the normal income tax might be. Why isn't that plain language with regard to a tax? Well, again, we would look at the plain language and say that's an amount in addition to the tax. No, it's not. No, it says the tax. The tax. It says… It says the taxpayer's tax under this chapter for the taxable year shall be an amount equal to 10% of the portion blah, blah, blah, and the taxpayer's tax shall be increased. How much clearer need it be? It's as clear as mud, Ron, because also penalties are also assessed in the same manner. Well, the fact that they're assessed in the same manner doesn't necessarily mean that they're taxes. But when Congress uses the term tax, I think Congress knows what it means. Well, that's what we're arguing. Congress knew what it meant when it's 6761C. I'm not… You're using a general provision about the definition of penalties. I'm using a specific provision that authorizes the imposition of this 10% tax. You're trying to use a general provision to introduce an ambiguity when 72T has no ambiguity whatsoever. Well, you're right. It's not. The general does not define the specific. But everything else does. The legislative history says why are we imposing this exaction? It's to deter prohibited conduct. An amount that's imposed on taxpayers to deter conduct is generally construed as a penalty. Well, you know, if I had taken money out of my 401K and knew that it was going to be taxed at 10% of what I was taking out, I guarantee you that indeed did deter me on a couple of occasions before I turned 59½. So an additional tax certainly defers the taxpayer because whether it's called a penalty or a tax, it's still out of the taxpayer's pocket. Well, no, but it's different, right? A tax that comes out of the taxpayer's pocket is also subject to deductions, right? When we look at the word and how Congress has structured the code, tax is an amount that is based on income. Well, counsel, you're positing that it can only be a tax if it's computed in a certain way. But aren't there certain taxes, even, say, the alternative minimum tax, that is not computed in the normal way with the usual set of deductions? You would not argue that the alternative minimum tax is not a tax, correct? No, I would not because the way you compute the tax is consistent with the allowance of income and deductions runs through the gap of Section 63. What the alternative minimum tax does, as we've said before in the brief, is it limits certain deductions that are used to do the calculation. But isn't that the question here is that once you concede that the tax code need not limit what is a tax to inclusion of certain exemptions or deductions and can be calculated in any number of ways, the fact that 72T calculates a portion of the tax in one way doesn't mean that it can't be a tax, right? Just because it doesn't account for deductions, for example. Agreed, but that's why we looked at the rules of statutory construction. We looked at the rules of legislative history. You look at the function of the section, right? Well, counsel, let's do this. You've hit the red mark. Why don't we hear from the government and I understand that we will be seeing you back for two minutes of rebuttal. So, let's see. Attorney, please correct me if I'm pronouncing your name wrong. Is it Boisture? Boisture. Boisture. Very good. Sorry about that. Let's hear from the government then. Please proceed. May it please the court. Pooja Boisture of the Department of Justice on behalf of the commissioner in this case. The exaction in section 72T is a tax because Congress explicitly said it was a tax. It not only referred to it as a tax in 72T, but it is called a tax in six other provisions of the Internal Revenue Code. Well, the word tax is almost a limited use here because the provision that your adversary is citing that says that no penalty can be imposed without personal approval in writing by a superior defines a penalty as, among other things, an addition to tax. So, I think your argument has to be that this is an additional tax rather than an addition to tax. That's right, Your Honor. And that's because the phrase addition to tax, just as the phrase additional amounts, are terms of art as the task force consistently has referred to those phrases as indicating the penalties in chapter 68 of the code. Section 72T appears not in chapter 68 of the code, I'm sorry, but in chapter 1, which relates to normal taxes and surtaxes. The whistleblower case that we cite... Excuse me. Is a surtax an addition to tax or is it additional taxes? It's neither as those two phrases are used as those coined or terms of art. And we see that section 72 appears in chapter 1 and that's why we also think it's calculated like income taxes. As Your Honor has mentioned to taxpayers' counsel, chapter 1 has many different types of taxes, not just the traditional income tax, but taxes like the alternative minimum tax. Because it is taxed, no supervisory approval was required here under section 6751. Taxpayer would like this court to look at bankruptcy cases that applied functional analysis and he's just asked this panel to apply a functional analysis. No functional analysis applies here where the court is tasked with just looking at the statutory tax, which is unambiguous. Functional analysis apply in the context of bankruptcy court cases or as NFIB demonstrated in constitutional questions, but not when you're just looking at the IRC for purposes of other code provisions, which is what 6751 is. One other thing we want to note is that the tax court already has called the exaction in 72T a tax for two other provisions of the code, 7491C, which relates to burden of production and 6013D, which relates to joint and several liability. Do I understand that the exaction also includes a penalty? In 72T, Your Honor? Yes. And in 6751? No, Your Honor. It does not include a penalty. The 72T, 10%— The word exaction does not include a penalty? Not in the context of 72T, Your Honor. But elsewhere? It may, but 72T is very clear that it is a tax, not a penalty. The word penalty does not appear in Section 72T, nor do either of those two terms of art, addition to tax or additional amount. Can I just ask you, so I understand your argument that those two terms—I don't want to say them right—addition to tax or any additional amount or terms of art, what is the difference between those two terms of art? For purposes of this case, Your Honor, I don't think there is a difference because the— Well, for purposes of when they do apply, what is the difference between an addition to tax and any additional amount? I'm not sure, Your Honor, but Chapter 68 does use those phrases for specific types of penalties. So, for example, this court very recently in the Anand case said that the FBAR penalty was not a type of penalty over which a tax court had jurisdiction because the tax court's jurisdiction was limited to the types of penalties in Chapter 68, which again, specifically, Chapter 68's title itself is addition to tax, additional amount, or assessable penalties. And this is where the tax court got its long line of cases referring to those phrases as terms of art specific to Chapter 68. But in usual parlance, the amount that was assessed against Mr. Grijalva, you'd have to call that an additional amount. And I'm not sure I understand why— It's an additional amount. He paid a certain amount. Now he has to pay an additional amount. Sure. In regular parlance, I understand what you're saying. But in the tax court parlance and in the tax court's parlance, that phrase has a very distinct meaning. It's certainly not the term that 72T uses. That's right. Congress called it a tax. They called it a tax, Your Honor. That's right. And they never used those phrases addition to tax or additional amount. They could have used those phrases— And I'd say, geez, is that a tax or a penalty? They'd say, well, I don't know for certain. But the Second Circuit's got that issue, and they'll decide. Yes. And if you look at the legislative history of 6751—by the way, we don't think this court needs to look beyond the Texas statute because of how unambiguous it is. But if it looks to the legislative history of 6751, that statute was enacted, one, after 72T was enacted, right? So the phrases that were used there, if they meant to capture 72T, they could have done so. They didn't do that. And the other thing about 6751 is that it was—Congress was concerned with the IRS using penalties as a bargaining chip. That's not the case for 72T, where taxpayers must self-report that tax. I mean, it's straightforward. You draw out of your 401K, you know your age, you have to report it, and you're going to pay additional income tax on it. That's right, Your Honor. And that's why, if you look to the legislative history of 72T, the taxpayer would like you to think that the only aim Congress had was to discourage conduct, which, by the way— Because you get a double benefit from it. It reduces your taxable income at the time that you deposit it into the 401K, and its growth is in tax until you draw it out at a later point in time when, allegedly, your income is going to be less, and so you tax the tax consequences of its withdrawal or less. And that's exactly what Congress was trying to do, was to recapture the tax that they had lost by giving this tax preference to taxpayers. All right. If there are no further questions— There's no discretion in the context of the leveling of this, correct? Is that as opposed to where a penalty is imposed, correct? Can you repeat that question? It's a calculation. There's no discretion. You withdraw the money, you do a calculation, you know the age of the individual, you multiply the 10 percent times the increase in the adjusted gross income, and you pay the tax. That's right. And taxpayers are supposed to self-report that. Okay. Thank you. Thank you, Your Honors. All right. Thank you very much. And, Mr. Agostino, you have reserved two minutes for rebuttal. Yes, if I may. So, one, the case that decided that the FBAR penalty, 6751B, would not apply— What's a supervisor going to approve here? What does a supervisor have to review? Exactly. Does the supervisor have the ability to waive this for the given taxpayer? If they met one of the statutory conditions, hardship, proper purpose. This money—again, background, if you went back to the record—this money did not come out as a distribution. The taxpayer borrowed from her pension fund. Right. I understand that. The pension grant said loan. She actually paid the money back. But because of the complicated pension formulas, the IRS at first said that 9,000 would be taxable. Then we went through the computations with them, and it was only 900 that was taxable. Right. So that's why you see the 90% reduction. That was a simple calculation. It wasn't a discretionary call. Oh, because then you look at were there a hardship. What was the money useful? Did we use it for a first home? Did we use it for medical expenses? The exaction applies to distributions that do not meet the exception. So the supervisor would look at whether the exception is met. What does not apply is reasonable cost. Usually you can avert a penalty if there is reasonable cost. Here, the only way to avoid the penalty is to get the right computation, which is how we got rid of 90% of the penalty, and then go through the facts. Were there the requisite hardship for use of the money that allows a withdrawal before 59 and a half, or a rollover within the 60 days of the distribution? So there are exceptions, but those exceptions are not relevant here. That's what the tax court case said, because we don't apply the case for $90. What was at issue here, this was a low-income taxpayer. Even the $3,000 was a lot of money. So, Mr. Agostino, I think we have your argument. We'd like to thank both counsel, thank the government for coming today, and thank Mr. Agostino for handling this pro bono, and let me just say the court appreciates very much the efforts on the part of both counsel. So, again, thank you very much. We will take the case under advisement. Thank you very much.